UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ODILON GONZALES ET AL                     CASE NO.  2:22-CV-01037

VERSUS                                    JUDGE JAMES D. CAIN, JR.

LOUISIANA SCRAP METALS                    MAGISTRATE JUDGE LEBLANC
RECYCLING LAKE CHARLES L L

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 51] filed by defendant

Louisiana Scrap Metals Recycling Lake Charles LLC ("LSM"). Plaintiffs Odilon Gonzales

and Sylvia Avila oppose the motion. Docs. 62, 103.

### I.
### BACKGROUND

This suit arises from an accident that occurred on April 30, 2021, at LSM's recycling

facility in Lake Charles, Louisiana. Plaintiffs allege as follows: Their son, Adrian Gonzalez

Avila, an employee of CP Contractors LLC ("CPC"), was tasked with torch-cutting aboard

the M/V SMITH TIDE, which was being scrapped at LSM, when a flash fire occurred.

Doc. 26, ¶ IV; doc. 103, p. 3. Mr. Gonzalez Avila ("decedent") succumbed to his injuries

on May 3, 2021, and his parents filed a wrongful death suit in this court against CPC and

LSM. Doc. 1. LSM then filed this motion for summary judgment, arguing that it bears no

liability because it did not exercise operational control over the work performed by the

decedent. Doc. 51. Plaintiffs oppose the motion. Doc. 62.

Plaintiffs subsequently amended the suit to add insurers Everest National Insurance Company, Scottsdale Insurance Company ("Scottsdale"), and Stonington Insurance Company as defendants. Doc. 72. After reaching a partial settlement, they dismissed all claims against CPC and their claims against LSM, but only to the extent of any uninsured exposure. Doc. 79. They also dismissed insurer Scottsdale to the extent of its liability under the policy issued to CPC, reserving "all rights to pursue any and all claims against any insurer(s) that may provide coverage to LSM," other than Scottsdale. *Id.*

The matter is now set for bench trial before the undersigned on November 9, 2026. Doc. 101. The court extended deadlines on the pending motion for summary judgment. Doc. 102. Plaintiffs filed a supplemental opposition [doc. 103], but the court has received no reply within the allotted time. Accordingly, LSM's Motion for Summary Judgment is now ripe for decision.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

LSM asserts that, under Louisiana law, it is not liable for the acts of independent contractor CPC. Plaintiffs maintain that general maritime law applies, and that under these principles there is sufficient evidence that LSM exercised operational control over CPC's work. Under both Louisiana law and general maritime law, the general rule is that a principal is not liable for the acts of an independent contractor—unless, *inter alia*, the principal retains or exercises operational control over the independent contractor's actions. *See Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989) (setting forth rule under general maritime law); *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir.

1994) (setting forth rule under Louisiana law). "There is no appreciable difference between federal maritime law and Louisiana law on this issue." *Menard v. LLOG Expl. Co., LLC*, 259 F.Supp.3d 475, 481 n. 26 (E.D. La. 2017). The parties agree that CPC was an independent contractor of LSM and that the controlling legal question is whether LSM exercised operational control over its actions. Accordingly, the court need not resolve at this stage whether general maritime or Louisiana law applies.

"The operational control test is not satisfied unless it is shown that the principal . . . determined the method by which the employees were to perform their work and instructed them accordingly." *Chiasson v. Brand Energy Sols., LLC*, 452 F.Supp.3d 472, 479 (W.D. La. 2020) (citing *Landry*, 889 F.2d at 1471 (5th Cir. 1989)). The principal's retention of operational control via its contract with the independent contractor "weighs heavier" than an actual exercise of operational control. *Parkman v. W&T Offshore, Inc.*, 673 F.Supp.3d 811, 823 (M.D. La. 2023) (quoting *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 729–30 (5th Cir. 2021)). Nevertheless, "the terms of a contract, while relevant, do not necessarily determine the outcome of the operational control inquiry." *Id.* (quoting *Tajonera v. Black Elk Energy Offshore Operations, LLC*, 2015 WL 6758258, at *14 (E.D. La. Nov. 5, 2015)). Instead, actual operational control may be found "if the principal has direct supervision of the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way[.]" *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003).

Plaintiffs make no argument as to control imposed by the LSM-CPC subcontract. Instead they point to evidence regarding LSM's supervision of CPC's work on the M/V

SMITH TIDE. When the vessel arrived at LSM's facility, LSM employees inspected it and made recommendations for the work that should be performed. Doc. 62, att. 3, p. 54. Among these, they advised that the winch and its lines should only be saw-cut as opposed to hot-cut or cut with torches. *Id.* at 54–55. No CPC employees were present during this inspection, however, and LSM did not set out any markers to indicate that the area should only be saw-cut. *Id.* at 55–56. CPC supervisor Luis Gonzales, brother of the decedent, also testified that LSM employee Oscar Jimenez would provide instruction on where to cut each day. Doc. 62, att. 2, pp. 13–14. He emphasized that "[o]rders was coming from [LSM] directly" and that LSM "would tell us what could be done and what could not be done." *Id.* at 27–28. While CPC "was in charge of sending the workers," Jimenez, on behalf of LSM, ultimately "[gave] the orders on where it could be cut within . . . the boat." *Id.* at 29. Jimenez maintains that, while he talked with CPC informally multiple times a week in his capacity as crane operator, he did not control their day-to-day activities. Doc. 51, att. 7, pp. 19–20, 27–28.

On the day of the accident, when the CPC crew was having trouble pulling a cable off of the winch, they asked Jimenez what to do. Doc. 62, att. 3, p. 46. Jimenez responded, "I don't know. Maybe cut the walls off." *Id.* at 46–47. He appeared to understand with this advice that they would cut the walls with hot work. *Id.* at 47. There is no indication that he ever apprised the CPC crew of LSM's decision that the area should only be saw-cut.

Jimenez testified that LSM personnel would regularly go to the M/V SMITH TIDE while CPC personnel were performing their work and make adjustments if they saw potential safety issues. Doc. 62, att. 3, pp. 59–60. LSM's safety manual also provides that

LSM supervisors "are responsible for ensuring all hot work is authorized and permitted prior to starting work **regardless of who is performing the hot work**." Doc. 62, att. 7, p. 2 (emphasis added). A hot work permit cannot be issued until the work area and all equipment have been inspected by "[t]he location supervisor, the individual performing the hot work, **and** the fire watch person[.]" *Id.* at 6 (emphasis added).

Viewing all evidence in a light most favorable to plaintiffs, the court finds a sufficient basis to determine that LSM controlled the manner in which CPC conducted its operations. Based on plaintiffs' accounts, LSM instructed CPC on when, where, and how to cut. Furthermore, even with Jimenez's knowledge that the operation was now being converted to hot work and that LSM bore ultimate responsibility for the safety of this work, he did not intervene to inspect the area or seek a hot work permit. LSM admits that the accident resulted because the decedent "apparently applied a cutting torch to an intact hydraulic line without visually inspecting the material to verify it was safe to cut," Doc. 51, att. 1, p. 3. While it casts blame on the decedent, plaintiffs have provided "evidence of 'direct supervision' by [LSM] 'over the step-by-step process of accomplishing the work." *Parkman*, 673 F.Supp.3d at 823 (quoting *Coleman*, 19 F.4th at 730). LSM's own materials show that it bore ultimate responsibility for the safety of this hot work. Accordingly, plaintiffs have presented sufficient evidence to create an issue of material fact and LSM is not entitled to summary judgment.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 51] will be

**DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 16th day of January, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**