UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ODILON GONZALES ET AL     CASE NO.  2:22-CV-01037

VERSUS         JUDGE JAMES D. CAIN, JR.

LOUISIANA SCRAP METALS   MAGISTRATE JUDGE LEBLANC
RECYCLING LAKE CHARLES
LLC

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 114] filed by defendant

Everest National Insurance Company. Plaintiffs Odilon Gonzales and Sylvia Avila oppose

the motion. Doc. 116.

### I.
### BACKGROUND

This suit arises from an accident that occurred on April 30, 2021, at a recycling

facility in Lake Charles, Louisiana, owned by defendant Louisiana Scrap Metals Recycling

Lake Charles LLC ("LSM"). Plaintiffs allege as follows: Their son, Adrian Gonzalez

Avila, an employee of CP Contractors LLC ("CPC"), was tasked with torch-cutting aboard

the M/V SMITH TIDE, which was being scrapped at LSM, when a flash fire occurred.

Doc. 26, ¶ IV; doc. 103, p. 3. Mr. Gonzalez Avila ("decedent") succumbed to his injuries

on May 3, 2021, and his parents filed a wrongful death suit in this court against CPC and

LSM. Doc. 1.

Plaintiffs subsequently amended the suit to add insurers Everest National Insurance

Company ("Everest"), Scottsdale Insurance Company ("Scottsdale"), and Stonington

Insurance Company as defendants. Doc. 72. After reaching a partial settlement, they dismissed all claims against CPC and their claims against LSM, but only to the extent of any uninsured exposure. Doc. 79. They also dismissed insurer Scottsdale to the extent of its liability under the policy issued to CPC, reserving "all rights to pursue any and all claims against any insurer(s) that may provide coverage to LSM," other than Scottsdale.[1] *Id.*

The matter is now set for bench trial before the undersigned on November 9, 2026. Doc. 101. Everest brings this motion for summary judgment, arguing that plaintiffs' allegations invoking the Longshoreman Harbor Workers Compensation Act ("LHWCA") and Jones Act preclude coverage under the policy's Marine Liability Exclusion. Doc. 114. Plaintiffs oppose the motion, asserting that these allegations remain contested and that, at any rate, the policy's language does not explicitly exclude coverage for this incident. Doc. 116.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara*

---

[1] LSM has filed a third-party demand for defense and indemnity against Scottsdale and CPC. Doc. 18. Those claims remain pending. *See* doc. 98 (Rule 26(f) Report).

*v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

The Everest policy provides $10 million in excess coverage to the $1 million commercial general liability policy issued by Zurich American Insurance Company. *See* doc. 114, att. 5, pp. 1–5. The Everest policy also contains a stand-alone Marine Liability Exclusion, stating in relevant part:

> This insurance does not apply to:
> 1.  Any liability arising out of any marine liability including but not limited to . . . ship repairers' legal liability terminal operation liability, wharfingers liability, liabilities arising from Jones Act . . . ship builders liability, or the

> U.S. Longshoremen and Harbor Workers' Act coverage . . . any liability arising out of maintenance, fueling, "loading or unloading" of any watercraft . . . .

*Id.* at 29.

Plaintiffs invoke the court's jurisdiction under the Jones Act and general maritime law based on allegations that the decedent was working aboard "a vessel located on navigable waters" at the time of the explosion. Doc. 26, ¶ IV. They also raised claims against LSM under the LHWCA because it "[a]t all pertinent times hereto . . . owned, operated, and/or controlled the vessel/structure located at its dock, which was at all pertinent times a vessel in navigation." *Id.* at ¶ V. To qualify as a Jones Act seaman, an employee must show (1) that his duties contributed to the function of a navigable vessel or the accomplishment of its mission; and (2) that he had a connection to a vessel in navigation, or to an identifiable group of vessels, that was substantial in terms of both its duration and its nature. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). Meanwhile, the LHWCA covers workers whose injuries are "caused by the negligence of a vessel." 33 U.S.C. § 905(b). A watercraft need not be in motion to qualify as a vessel under the LHWCA. Instead, the statute applies to "any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 497 (2005). This definition "applies equally" to the determination of a vessel under the Jones Act. *Holmes v. Atl. Sounding Co., Inc.*, 437 F.3d 441, 448 (5th Cir. 2006).

On a prior motion for summary judgment, LSM sought the court's determination that it was not liable for the acts or omissions of CPC employees under Louisiana law. Doc.

51, att. 1. To this end it asserted that state law, rather than maritime law, applied because "the remaining structure was no longer capable of being used as a vessel in maritime commerce." *Id.* at 2; *see* doc. 37 (LSM answer and affirmative defenses). In opposition plaintiffs maintained that (1) general maritime law applied and (2) under general maritime law, LSM exercised operational control over CPC's work. Doc. 62. The court resolved the motion without determining the applicable law, because there was no substantive difference between the two on the issue of principal liability. Doc. 110.

As such, there has been no determination on the M/V SMITH TIDE's qualifications as a vessel at the time of the accident. Everest attempts to show the absence of a factual dispute by pointing to the following brief exchange from the deposition of LSM safety manager Christopher Sammons:

> Q. It was still capable of floating, obviously, and being moved about in the water as of June 14 according to this one, right?
>
> MR. ZAUNBRECHER:
> Object to form.
>
> THE WITNESS:
> It was still floating.

Doc. 114, att. 4, p. 42. But floating is not enough to qualify a craft as a vessel. *See Moore v. Bis Salamis, Inc.*, 748 F.Supp.2d 598, 605 (E.D. Tex. 2010) (floating offshore platform, even though capable of limited range of movement, did not qualify as vessel); *Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 124–26 (2013) (floating home, which lacked rudder or steering mechanism and was incapable of self-propulsion, did not qualify as vessel). If scrapping had progressed to the point where the vessel was no longer practically

capable of transportation over water, then the Jones Act and LHWCA do not apply and there is no issue with the excess policy's marine exclusion. Plaintiffs are permitted to argue in the alternative on this point. Meanwhile, Everest fails to put forth evidence showing the absence of a factual dispute. Accordingly, summary judgment is inappropriate at this stage.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 114] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 25th day of March, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**