**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**ODILON GONZALES ET AL** — **CASE NO. 2:22-CV-01037**

**VERSUS** — **JUDGE JAMES D. CAIN, JR.**

**LOUISIANA SCRAP METALS RECYCLING LAKE CHARLES L L** — **MAGISTRATE JUDGE LEBLANC**

# MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 114] filed by defendant Everest National Insurance Company. Plaintiffs Odilon Gonzales and Sylvia Avila oppose the motion. Doc. 116.

## I. BACKGROUND

This suit arises from an accident that occurred on April 30, 2021, at a recycling facility in Lake Charles, Louisiana, owned by defendant Louisiana Scrap Metals Recycling Lake Charles LLC ("LSM"). Plaintiffs allege as follows: Their son, Adrian Gonzalez Avila, an employee of CP Contractors LLC ("CPC"), was tasked with torch-cutting aboard the M/V SMITH TIDE, which was being scrapped at LSM, when a flash fire occurred. Doc. 26, ¶ IV; doc. 103, p. 3. Mr. Gonzalez Avila ("decedent") succumbed to his injuries on May 3, 2021, and his parents filed a wrongful death suit in this court against CPC and LSM. Doc. 1.

Plaintiffs subsequently amended the suit to add insurers Everest National Insurance Company ("Everest"), Scottsdale Insurance Company ("Scottsdale"), and Stonington

Insurance Company as defendants. Doc. 72. After reaching a partial settlement, they dismissed all claims against CPC and their claims against LSM, but only to the extent of any uninsured exposure. Doc. 79. They also dismissed insurer Scottsdale to the extent of its liability under the policy issued to CPC, reserving "all rights to pursue any and all claims against any insurer(s) that may provide coverage to LSM," other than Scottsdale.[1] *Id.*

The matter is now set for bench trial before the undersigned on November 9, 2026. Doc. 101. Stonington brings this motion for summary judgment, asserting that plaintiffs' claims against it are barred under the Stonington policies' "Aircraft, Auto Or Watercraft" exclusion. Doc. 126. Plaintiffs oppose the motion.

## II.
## SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit

[1] LSM has filed a third-party demand for defense and indemnity against Scottsdale and CPC. Doc. 18. Those claims remain pending. *See* doc. 98 (Rule 26(f) Report).

"significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

At issue in plaintiffs' claims against Stonington are a marine general liability policy ("primary policy") and an excess policy, both of which were issued by Stonington to LSM. Doc. 126, atts. 4 & 5. The primary policy contains the following relevant exclusion:

> g. Aircraft, Auto Or Watercraft
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership,

> maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.
>
> This exclusion does not apply to:
> (1) A watercraft while ashore on premises you own or rent;
> (2) A watercraft you do not own that is:
> (a) Less than 26 feet long; and
> (b) not being used to carry persons or property for a charge.
> (3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured.
> (4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or
> (5) "Bodily injury" or "property damage" arising out of:
> (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
> (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment."

Doc. 126, att. 4, p. 11. Under Endorsement No. 15, Non-Owned Watercraft Endorsement, the primary policy further provides:

> In consideration of the premium charged, it is hereby understood and agreed that Exclusion Clause g. under Section I, Coverage A . . . shall not apply with respect to watercraft not owned and not operated by a Named Insured.

*Id.* at 41. All exclusions in the primary policy apply to the excess policy, which lists among its exclusions:

> 21. Any liability for any "Claim" not covered by the policies listed in Item 2 of the Declarations. This exclusion will not apply to the extent that such "Claim" would have been covered except for the reduction or exhaustion of an aggregate limit shown in Item 2 of the Declarations by payment of "Claim(s)" for "Occurrence(s)" which are also covered by this Policy.

Doc. 126, att. 5, p. 21.

Stonington argues that its coverage for decedent's death is excluded under the terms of both policies, because it is undisputed that LSM owned and operated the M/V SMITH TIDE, which was floating dockside at the time of the accident. Doc. 126, att. 6, pp. 33–34. In response plaintiffs note that the court has already denied summary judgment on M/V SMITH TIDE's vessel status, for the purpose of deciding whether the Everest policy's Marine Liability Exclusion applies. Doc. 118. Stonington attempts to distinguish this ruling, arguing that "vessel" and "watercraft" have distinct meanings under Louisiana law. Doc. 134. Plaintiffs also maintain that, even if the exclusion applies, coverage may be mandated because the accident was caused by LSM's negligence for its worksite operations and negligent oversight of CPC and Gonzalez—two events creating a separate source of liability, to which no exclusion in the Stonington policies applies. Doc. 133. Stonington asserts that the watercraft exclusion precludes coverage, because there is no suggestion that plaintiffs' claims fall under another portion of the policy. Doc. 134.

It is well established that floating is not enough to qualify a craft as a vessel, as the court emphasized in its prior ruling. *See, e.g.*, *Moore v. Bis Salamis, Inc.*, 748 F.Supp.2d 598, 605 (E.D. Tex. 2010) (floating offshore platform, even though capable of limited range of movement, did not qualify as vessel); *Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 124–26 (2013) (floating home, which lacked rudder or steering mechanism and was incapable of self-propulsion, did not qualify as vessel). A watercraft, under Louisiana law, "is commonly understood to be a boat, a vessel or some other apparatus that goes about on the water." *Viator v. Dauterive Contractors, Inc.*, 831 So.2d 407, 408 (La. Ct. App. 5th Cir. 2002). Accordingly, Stonington notes, the Louisiana Supreme Court has

applied the same language as the exclusion at issue here to a moored barge. *Henry v. South La. Sugars Co-op, Inc.*, 957 So.2d 1275 (La. 2007). In that matter, however, "there [was] no real dispute" whether the barge (which was being used as a dock to unload cargo in the Mississippi River) was a "watercraft." *Id.* at 1278. Instead, the court's ruling focused on whether the barge's moored position satisfied the exclusion's exception for "[a] watercraft while ashore on premises you own or rent[.]" *Id.* at 1278–80.

As the court noted in its previous ruling, the barge was in the process of being scrapped at the time of the accident after being towed to LSM's facility. The parties do not dispute that it was still afloat. But there is no evidence to establish that it could still "go[] about" on the water. *Viator*, 831 So.2d at 408. Because the court cannot determine at this stage whether the barge was still a watercraft, there is no basis for granting summary judgment on the applicability of Stonington's exclusions and the court need not consider plaintiffs' alternative arguments.

## IV.
## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 126] will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers on the 11th day of September, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**